IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

WAYNE SANFORD                                                                                       PLAINTIFF

v.                                                                          CIVIL ACTION # 2:07cv253-KS-MTP

CENTURY SURETY COMPANY                                                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the motion for summary judgment filed by the Defendant Century Surety Company. Because the Plaintiff has failed to demonstrate a genuine issue of material fact, his claims against the Defendant cannot survive summary judgment, and the motion for summary judgment [# 11] should be **granted**, while the motion to strike [# 23] should be **denied as moot**.

### I. FACTUAL BACKGROUND

This case arises out of the unfortunate consequences of horseplay between old friends. After one party was injured because of the other's roughhousing, the injured worker filed suit against his friend, the Plaintiff in this case. Although the Plaintiff had insurance, his insurer refused to defend or indemnify him in the suit because his horseplay with his friend was intentional. The Plaintiff now brings suit against his insurer asking for his contractual rights of indemnity or defense.

Wayne Sanford works as an oilfield consultant. While working at a rig in Wyoming, Sanford decided to tour the rig floor to greet the workers. During his tour, he spotted an old

1

friend, Ronald Worman, and decided to say hello.  Instead of just shaking Worman's hand, Sanford decided to deliver his signature roughhouse greeting.  Sanford placed Worman in a headlock and squeezed, "simultaneously asking how he was doing." *See* Def.'s Ex. C (Dec. 7, 2007).  Sanford's greeting was successful, as Worman immediately responded that "only Wayne Sanford would do something like that." *Id.*  Despite Worman's request that Sanford stop, Sanford returned a few minutes later and "placed both hands around [Worman's] neck and began to choke him." *See* Def.'s Ex. B ¶ 14 (Dec. 7, 2007).  Worman finally ended the encounter by pushing Sanford away. *Id.*

Although unknown to Sanford at the time, Worman was still recovering from a significant neck injury.  Immediately after encountering Sanford, Worman experienced severe pain that led to a "serious and permanent injury to his neck." Def.'s Ex. B ¶ 15 (Dec. 7, 2007).  Worman eventually decided to file suit against Sanford for personal injuries that resulted from his greeting.  In August of 2007, Worman filed a complaint against Sanford in the District Court for Carson County, Wyoming.

Prior to the incident, Sanford had purchased an insurance policy from Century Surety Company ("Century"). *See* Def's Ex. A (Dec. 7, 2007).  The "commercial lines policy" issued by Century was designed to cover general commercial liability and other business-related claims. After investigating the allegations in Worman's complaint, Century concluded that Sanford's policy did not cover the incident alleged by Worman, as it was not an "occurrence" as defined by the policy contract. *See* Pl.'s Ex. C at 7 (Oct. 15, 2007).

Unsatisfied with Century's decision, Sanford filed suit in this Court against the insurer in October of 2007.  He alleges that Century has "refuse[d] to honor the terms of the policy" and

2

either indemnify him or defend him against Worman's claim on the merits. Pl.'s Compl. ¶ 12 (Oct. 15, 2007).

Century has since moved for summary judgment on Sanford's claim. It argues that Sanford's act on the rig was not an accident as defined by the policy. Because there was no accident, there was no "occurrence" that would trigger Century's duties of indemnification or defense. In the alternative, Century argues that either the "expected or intended injury" exclusion or the "assault and battery" exclusion justify their refusal to defend or indemnify Sanford.

## II. STANDARD OF REVIEW

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To support a motion for summary judgment, "the moving party ... [has] the burden of showing the absence of a genuine issue as to any material fact." *Burleson v. Tex. Dept. of Criminal Justice,* 393 F.3d 577, 589 (5th Cir 2004). Material facts are those that "could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (internal citations omitted). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party" on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the court views all evidence "in the light most favorable to the non-moving party" and "draw[s] all reasonable inferences in its favor." *Breen v. Texas A&M Univ.*, 485 F.3d 325, 331 (5th Cir. 2007). If the movant satisfies its initial

burden, then the burden shifts back to the nonmoving party to produce evidence indicating that a genuine issue of material fact exists for each essential element of its case. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003).  The nonmovant is not entitled to merely rest on her pleadings, but must set forth "specific facts showing there is a genuine issue for trial." *DirecTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).  If the nonmovant responds and still "no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

Under Mississippi law, a liability insurance company's duty to defend turns on the language of the policy contract. *Sennett v. U.S. Fidelity & Guar. Co.*, 757 So. 2d 206, 212 (Miss. 2000).  To determine if they have an obligation to defend, an insurer must compare the "language of the policy" to the "allegations of the complaint" filed against the insured. *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 403 (Miss. 1997).  Although an insurer has "an absolute duty to defend a complaint which contains allegations covered by the language of the policy," the insurer "clearly has no duty to defend a claim outside the coverage of the policy." *Moeller v. American Guar. and Liability Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996).  In deciding between the duty to defend and the duty to indemnify, the Mississippi Supreme Court has held that "an insurance company's duty to defend is neither greater nor broader than the duty to comply with its other contractual obligations." *Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440, 450-51 (Miss. 2006).

### III. APPLICATION & ANALYSIS

**1. Sanford's actions were not an "occurrence" under the policy.**

The actions of Sanford and the injury that resulted are not covered by his Century policy because they do not fit the contract's definition of an "occurrence." To offer coverage the occurrence must have been an accident, and case law makes clear that the intentional acts of the insured are not accidental, even if the extent of the damage is unintended.

Sanford's policy with Century covers claims for damages against an insured for bodily injury or property damages "caused by an occurrence." *See* Pl.'s Compl. Ex. A at 12 (Oct. 15, 2008). The policy defined an "occurrence" as "an accident." *Id.* at 43. The term "accident" is not defined by the policy contract.[1] In addition, a provision in the main contract excludes "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." *Id.* at 13.

To determine whether an accident occurred, the court need only ask "whether the underlying actions of the insured were intentional." *Acceptance Ins. Co. v. Powe Timber Co, Inc*. 219 Fed. Appx. 349, 351 (5th Cir. 2007).[2] This is because "the term accident refers to [the insured's] action and not whatever unintended damages flowed from that act." *ACS Construction Co. v. CGH*, 332 F.3d 885, 888-89 (5th Cir. 2003). "Thus, under Mississippi law, if the insured

---

[1] When the term "accident" is not defined by the policy contract, previous federal courts have looked at the incident from the standpoint of the injured party to see if an "accident" occurred. *See Virginia Ins. Reciprocal v. Forrest County Gen. Hosp.*, 814 F. Supp. 535, 537 (S.D. Miss. 1993).

[2] "The only relevant consideration is whether ... a chain of events leading to the injuries complained of was set in motion and followed a course consciously devised and controlled by [the insured] without the unexpected intervention of any third person or extrinsic force." *Allstate Ins. Co. v. Moulton*, 464 So. 2d 507, 509 (Miss. 1985).

acts intentionally and the resulting injuries are foreseeable, the incident was not an occurrence within the terms of the policy, regardless of whether the resulting injuries were intended." *Acceptance Ins. Co.*, 219 Fed. Appx. at 351.

Sanford's decision to greet Worman with a headlock was undeniably intentional, as was Sanford's choice to choke him twice before leaving the rig. Although there is no evidence that Sanford intended to inflict any injuries on Worman, his lack of intent to harm Worman is irrelevant. Although Worman's injuries were severe, neck injuries are certainly foreseeable for someone placed into a headlock without warning and choked repeatedly after pleas to stop. The unintended consequences of Sanford's intentional horseplay are simply not an accident under his policy.

Sanford's argument, that because he didn't intend to harm Worman his act was accidental, was neatly refuted by the Mississippi Supreme Court in *United States Fidelity and Guaranty Co. v. Omnibank,* 812 So. 2d 196, 201 (Miss. 2002). That case settled a perceived contradiction in state case law as to how reviewing courts must define the term accident when the contract fails to do so.[3] In *Omnibank*, the Court stated that "we reject as illogical the argument that coverage exists if an insured does not intend the precise damages resulting from its intentional act." *Id*. Interpreting the policy contract in accordance with state law, the Court noted that "a claim resulting from intentional conduct which causes foreseeable harm is not covered, even where the actual injury or damages are greater than expected or intended." *Id.* at 201 (*citing*

---

[3] Reviewing the *Omnibank* decision, the Fifth Circuit noted that "[t]he Mississippi Supreme Court reconciled its decisions in *Allard* and *Moulton* concluding that the cases 'are consistent in that they both address the nature of the insured party's conduct, not the resulting damages of that conduct.' 812 So.2d at 201. The Mississippi Supreme Court, however, was explicit that '*Allard* does not constitute a change in the law' and reaffirmed its holding in *Moulton*. ACS Construction Co. v. CGH*, 332 F.3d 885, 890 (5th Cir. 2003) (citations omitted).

*Nationwide Mut. Fire Ins. Co. v. Mitchell ex rel. Seymour*, 911 F. Supp. 230 (S.D.Miss.1995)). The Court concluded by holding that "an insurer's duty to defend under a general commercial liability policy does not extend to negligent actions that are intentionally caused by the insured." *Id.* at 202

**2. Sanford's actions constitute battery and are excluded under the policy.**

Even if the actions of Sanford were an occurrence under the policy, his contact with Worman also fits the definition of battery sufficient to exclude coverage.  According to the Wyoming complaint filed against Sanford, he had no consent to greet Worman with a headlock, and Worman verbally protested and asked Sanford to stop.  Sanford's harmful and offensive touching of Worman is explicitly excluded by the policy contract and hence triggers no duty by Century to defend or indemnify Sanford.

Sanford's policy contract excludes coverage for "bodily injury" resulting from "any actual, threatened or alleged assault or battery." *See* Pl.'s Compl. Ex. A at 52 (Oct. 15, 2008). The exclusion also incorporates an anti-concurrent clause provision.  In conjunction with the battery exclusion, that provision excludes coverage where "any actual or alleged injury arises out of any combination of an assault or battery-related clause and a non-assault or battery-related cause." *Id.*  The two combine to exclude any actions where negligence and intentional actions combined to cause an injury, and hence bar a claim of negligence that fits the definition of the tort of battery.

Sanford's actions meet the definition of battery under both Mississippi and Wyoming

law.[4]  The Restatement of Torts defines battery as an actor "intending to cause a harmful or offensive contact with the person of the other or a third-person, or an imminent apprehension of such a contact, and an offensive contact with the person of the other directly or indirectly results."[5]  As discussed above, Sanford intended and did cause a contact with Worman's person.  According to Worman's complaint, that contact was harmful and offensive, as Worman asked Sanford to stop choking him, even as Sanford ignored his requests.  Worman's unique susceptibility to neck injuries does not make Sanford's actions any less of a battery.[6]

## IV.  CONCLUSION

It is undisputed that Wayne Sanford did not intend to severely injure his friend Ronald Worman on the oil rig in Wyoming.  But his act of  "greeting" Worman was nothing short of intentional.  Because he intended to touch Worman to say hello, his greeting cannot be considered an accident (and hence an occurrence) under his contract and applicable Mississippi law.  Moreover, any accident that occurred in Sanford's headlock of Worman is excluded from coverage based on the battery exclusion in his policy contract.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the motion for summary judgment [# 11] is **granted** and the motion to strike [# 23] is **denied as moot**.

---

[4] Both Mississippi and Wyoming apply the intentional tort as defined in the Restatement. *See Webb v. Jackson*, 583 So. 2d 946, 951 (Miss. 1991); *see also Jung-Leonczynska v. Steup*, 803 P.2d 1358, 1363 (Wyo. 1990).

[5]  Restatement (Second) of Torts § 18.

[6] *See* Restatement (Second) of Torts § 31 (discussing the classic "thin-skull" or "eggshell plaintiff" rule).

SO ORDERED AND ADJUDGED on this, the 28th day of March, 2008.

                                                *s/Keith Starrett*
                                                UNITED STATES DISTRICT JUDGE